## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PATRICIA J. OHLUND,** | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-02911-TNM |
| **ANTONY BLINKEN,** | |
| Defendant. | |

## MEMORANDUM ORDER

Patricia Ohlund is a U.S. citizen who worked for the U.S. Embassy in Germany. Proceeding *pro se*, she sues Secretary of State Antony Blinken under the Age Discrimination in Employment Act (ADEA) for denying her retirement benefits because of her age. The Secretary has moved to dismiss, arguing that Ohlund failed to timely exhaust administrative remedies. The Court denies that motion because Ohlund pleads facts sufficient to trigger an equitable exception to timely exhaustion.

## I.

Ohlund worked for the U.S. Embassy in Germany from 2005 to 2018. *See* Compl. at 9, ECF No. 1.[1] When she began, she was older than 45 years old. *See id.* And because of that, Ohlund was denied retirement benefits under the Embassy's Defined Benefit Plan, which categorically excluded employees who started work after their 45th birthday. *See id.* According to Ohlund, the State Department told employees that German law governed the Plan and that the age threshold was thus legal. *See id.* But in 2014 and 2015, a German court found age-based

---

[1] The page number citations to Ohlund's filings are those generated by CM/ECF.

eligibility requirements like those in the Plan illegal under German law.  *See id.*; *see also* Pl.'s Opp'n to Def.'s Mot. to Dismiss (Opp'n) at 12, ECF No. 41.  After the 2015 decision, State terminated the Plan.  *See* Compl. at 9.  Yet it failed to implement a new, age-neutral plan until after Ohlund retired.  *See id.*  So Ohlund has received no retirement benefits, despite turning 65.  *See id.*

Ohlund and her colleagues formed a subcommittee within their local employee association in 2019 to request review of State's alleged age discrimination.  *See* Opp'n at 7.  And they met with staff about gaining retroactive retirement benefits.  *See id.* at 7–8.  But State eventually issued an official notice—cable 20 STATE 21066—denying retroactive benefits to Ohlund and her colleagues in February 2020.  *See id.* at 8.

Soon after, State placed most of its staff on administrative leave or teleworking status because of the COVID-19 pandemic.  *See id.*  When the Embassy reopened several months later, Ohlund again met with the subcommittee to assess legal options.  *See id.* at 9.  Ohlund claims she tried to contact an Equal Employment Opportunity Commission counselor in June 2020, but none of the names and addresses on the website were valid.  *See id.*  So she contacted another EEOC branch and eventually reached a counselor a month later.  *See id.*  That counselor told Ohlund she could file a formal discrimination complaint, and she did soon after.  *See* Compl. at 32–36 (formal EEOC complaint).

But that process proved fruitless.  The EEOC dismissed Ohlund's case because she had failed to timely contact a counselor as required by regulation.  *See id.* at 24–29 (EEOC decision).  And the EEOC denied her request for reconsideration.  *See id.* at 11–13.  So Ohlund sued the Secretary, alleging that State violated the ADEA by denying her retirement benefits.  *See*

*generally* Compl.; Opp'n.[2]  The Secretary moved to dismiss under Rule 12(b)(6), claiming that

Ohlund's ADEA claim is untimely.  *See* Def.'s Mem. in Support of Mot. to Dismiss (MTD),

ECF No. 38-1.  This Court has jurisdiction under 28 U.S.C § 1331.

## II.

 To survive a Rule 12(b)(6) motion, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), that

states a facially plausible claim for relief, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  A claim is facially plausible when its facts "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  In evaluating a Rule 12(b)(6) motion, courts construe the complaint in the light

most favorable to the plaintiff and accepts as true all reasonable inferences.  *Zimmerman v. Al

Jazeera Am., LLC*, 246 F. Supp. 3d 257, 285 (D.D.C. 2017).

Because Ohlund is *pro se*, the Court considers all her filings, including documents

attached to her Complaint, *see Brown v. Whole Foods Mkt. Grp., Inc*., 789 F.3d 146, 152 (D.C.

Cir. 2015), and holds her submissions to "less stringent standards than formal pleadings drafted

by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).

To sue under the ADEA, Ohlund must have first timely exhausted administrative

remedies.  *See Washington v. WMATA*, 160 F.3d 750, 752 (D.C. Cir. 1998).  As relevant here,

she "must [have] initiat[ed] contact with a[n] [EEOC] Counselor within 45 days" of the alleged

discrimination.  29 C.F.R. § 1614.105(a)(1).  The EEOC "shall extend the 45-day time limit" if

---

[2]  Ohlund also sued for age discrimination under German law.  *See* Compl. at 9.  But she
voluntarily dismissed those claims after reviewing the Secretary's motion to dismiss.  *See* Opp'n
at 15.

Ohlund shows that "she was not notified of the time limits and was not otherwise aware of them," or that "she did not know and reasonably should not have known that the discriminatory matter . . . occurred," or "for other reasons considered sufficient." *Id.* § 1614.105(a)(2).

The ADEA's exhaustion requirement is not jurisdictional. *See, e.g.*, *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010). Rather, it functions as a statute of limitations and is therefore an affirmative defense that the Secretary "bears the burden of pleading and proving." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Because the requirement is non-jurisdictional, it is also subject to equitable estoppel. *See Kennedy v. Whitehurst*, 690 F.2d 951, 962 (D.C. Cir. 1982). That doctrine bars a defendant who "took active steps to prevent [a] plaintiff from litigating in time," from asserting untimeliness. *Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998).[3]

The "traditional elements" of equitable estoppel include "[a] false representation, a purpose to invite action by the party to whom the representation was made, ignorance of the true facts by that party," "reliance," "a showing of an injustice," and "lack of undue damage to the public interest." *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988). Courts have noted that the doctrine may apply when a plaintiff "has been induced or tricked by [her] adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); *see also Currier*, 159 F.3d at 1368 (applying equitable estoppel when a defendant's misleading statements made a plaintiff reluctant to timely file a

---

[3] The Supreme Court and the D.C. Circuit "have occasionally conflated" equitable estoppel with equitable tolling. *Currier*, 159 F.3d at 1367. But the two "have distinct criteria." *Id.* Equitable tolling "allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Id.* Equitable estoppel, on the other hand, "prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from litigating in time." *Id.*

discrimination complaint). And courts have been more willing to excuse untimely filings when *pro se* parties "make diligent but technically defective efforts to act within a limitations period." *Bowden*, 106 F.3d at 438.

### III.

Because the Secretary argues that Ohlund's claim is untimely, *see* MTD at 4–7, he bears the initial burden of proof, *see Bowden*, 106 F.3d at 437. He argues that Ohlund did not contact an EEOC counselor within 45 days of knowing that she had a discrimination claim. *See* MTD at 4–5. The Secretary claims that Ohlund knew of her claim—at the latest—when State issued the official notice denying her retirement benefits in February 2020. *See id.* at 5. And, as Ohlund concedes, she did not contact a counselor until July 2020. *See* Compl. at 10. Her claim was therefore untimely by about three months. *See id.* at 25 (EEOC decision). So the Secretary has satisfied his initial burden.

 The burden now shifts to Ohlund to show that the Secretary should be estopped from raising an untimeliness defense. *See Bowden*, 106 F.3d at 437. Recall that Ohlund claims State consistently misled her by telling her the Plan was "governed by German law" and "fully complied with applicable local employment laws in Germany." Compl. at 9; Opp'n at 21. Ohlund explains that even if she had been aware of the ADEA's 45-day time limit, she "would not have considered [it] relevant to [her] situation." Opp'n at 22. Indeed, she alleges that State "held and communicated openly that the EEO[C] channel was not available for matters related" to the Plan. *See* Compl. at 15. Ohlund also claims that the COVID-19 pandemic and lack of active EEOC counselors listed on the website delayed her in contacting an EEOC counselor. *See id.* at 22–23. More, Ohlund asserts that she diligently pursued her discrimination claim as early

as 2019 when she sought relief for herself and other affected colleagues by forming a subcommittee to meet with the Embassy.  *See id.* at 22.

Crediting Ohlund's allegations as it must, the Court finds that Ohlund has pled facts sufficient to support a claim of equitable estoppel.  *Accord Fantasia*, No. 22-cv-0100, 2022 WL 17475392, at *3 (D.D.C. Dec. 6, 2022) (finding the same for similarly situated U.S. Embassy-Germany employee).  Ohlund alleges that State misled her about which law governed the benefit plan, *see, e.g.*, Compl. at 9; Opp'n at 21, which supports barring the Secretary from claiming Ohlund was tardy in contacting an EEOC counselor, *see, e.g.*, *Currier*, 159 F.3d at 1368; *Smith-Thompson*, 657 F. Supp. 2d at 133.  And despite missing the deadline to contact a counselor, Ohlund asserts that she diligently pursued her discrimination claim from 2019 onward—a fact other courts have found salient.  *See, e.g.*, *Bowden*, 106 F.3d at 438; *Symko v. Potter*, 505 F. Supp. 2d 129, 136–37 (D.D.C. 2007).  Finally, Ohlund's *pro se* status also supports estoppel. *See Bowden*, 106 F.3d at 438.

To be sure, Ohlund's burden at summary judgment will be higher.  The D.C. Circuit has cautioned that equitable estoppel's "application to the government must be rigid and sparing . . . and will certainly include proof of each of the traditional elements of the doctrine."  *Sanders*, 860 F.2d at 1111; *accord Rahimi v. Weinstein*, 271 F. Supp. 3d 98, 103–04 (D.D.C. 2017).  But on these facts at the motion-to-dismiss stage, the Court will estop the Secretary from using Ohlund's lateness as a defense.

*     *     *

For these reasons, it is hereby

**ORDERED** that the Secretary's Motion to Dismiss is DENIED.

**SO ORDERED**.


Dated:  December 29, 2022

_____
TREVOR N. McFADDEN, U.S.D.J.